UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK W. BAKER | ) | |
| | ) | |
| Plaintiffs, | ) | No. 18 C 07365 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SANTANDER CONSUMER USA d/b/a | ) | |
| CHRYSLER CAPITAL AND COLLIER | ) | |
| BLACK, Individually. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Derrick Baker filed a lawsuit against his former employer, Santander Consumer, and his supervisor, Collier Black (for convenience's sake, together referred to as "Santander"), alleging violations of Title VII and the Family and Medical Leave Act. *See* R. 1, Compl.[1] Santander now moves to compel arbitration and stay the lawsuit, arguing that Baker's claims fall within the scope of an enforceable arbitration agreement. R. 20, Def.'s Mot. Compel. In response, Baker argues that he had never seen the alleged arbitration agreement until this litigation. R. 24, Pl.'s Resp. Br. at 2. For the reasons stated below, Santander's motion is denied without prejudice. An evidentiary hearing is needed to decide the issue.

---

[1]This Court has subject matter jurisdiction over the federal claims in this case under 28 U.S.C. § 1331. Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

1

## I. Background

Santander's motion to compel arbitration is really a motion for summary judgment on an affirmative defense, that is, the defense that Baker agreed to arbitrate the claims. In deciding this motion for summary judgment, the Court views the evidence in the light most favorable to Baker. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002).

Santander offered Baker a job as a Dealer Relationship Manager in July 2016. R. 24-1, Pl.'s Resp. Br., Exh. A, Baker Decl. ¶ 2; *id.*, Exh. B, Offer Letter. Before he could start the new job, Baker—like all Santander new hires—was required to complete the online "Compliance" portion of Santander's New-Hire Orientation, which includes an acknowledgement of Santander's Arbitration Policy. *See* R. 21-1, Defs.' Mot. Compel, Exh. 1, Howell Decl. ¶¶ 4-5. To access and acknowledge the Arbitration Policy during Orientation, a new hire must move through several steps on the company's software platform. When employees first log onto the Orientation "Compliance Policies" section, they see the following sample screen:



Howell Decl., Exh. A. As the screenshot shows, one part of the Compliance Policies module requires the employee to click the "View Details" button next to "Arbitration Policy." *Id.* ¶ 6. After clicking that button, employees are brought to the next screen. On this screen, in order to move forward with the Orientation, the employee must click on "Activate" as shown here:



Howell Decl., Exh, B.

Clicking the "Activate" button brings up a dialogue box that asks the employee what they "want to do with" the Arbitration Policy. Howell Decl. ¶ 7. The new hire can click one of three options: "Open," "Save," or "Save as." *Id.* This is what that screen looks like:



Howell Decl., Exh. C. If the employee chooses "Open," then a Microsoft Word version of the Arbitration Policy opens up, allowing for a full view of its terms. Howell Decl. ¶ 8; *id.*, Exh. D. The Arbitration Policy provides for arbitration of any claim against the company (and against any employee of the company) arising out of the employment relationship:

> The Company and Associate agree to submit to binding arbitration any dispute, claim, or controversy that may arise between Associate and the Company arising out of or in connection with the Company's business, the Associate's employment with the Company, or the termination of Associate's employment with the Company.
>
> This Arbitration Policy is intended to broadly cover the entire relationship between Associate and Company and includes, without limitation (except as specifically notes below), any dispute claim or controversy relating to … any claim arising under … any state or federal statute …, including but not limited to … Title VII of the United States Code. This Arbitration Policy also includes claims that the Associate may bring against other employees or agents of the Company, that are based in whole or in part, on the employment relationship between the Associate and the Company.

Howell Decl., Exh. J at 1. After having (presumably) read the Policy, the employee must then go back to the New-Hire Orientation start-screen and click the "Mark

Complete" button next to "Arbitration Policy" on the screen. Howell Decl. ¶ 9. Next, the employee must click an "Acknowledge" button, which prompts yet another new screen that says, "I have reviewed a copy of [Santander's] Arbitration Policy and understand that my employment is 'at will' and that nothing contained in the arbitration agreement changes that status." *Id.* ¶¶ 10-11; Howell Decl., Exh. G. The employee can either click "Cancel" or "Acknowledge." Howell Decl., Exh. G. An employee cannot access this pop-up screen unless he or she has opened the Arbitration Policy. Howell Decl. ¶ 11.

Finally, once the employee has clicked this final "Acknowledge" button, the system displays a screen to show the completion of the Arbitration Policy section of the Compliance module, as indicated by a check mark and "100%". A sample of the final screen is shown here:



Santander's records show that Baker completed the Compliance section of New-Hire Orientation on his first day on the job. Howell Decl. ¶ 15; *id.*, Exh. I; R. 31, Defs.' Resp. to Pl.'s Surreply., Exh. 5. Baker's employment relationship with Santander did not last long after that: a little over a year later, Baker was fired. Baker Decl. ¶ 12. He now brings this lawsuit, alleging several federal employment-law claims. Santander moves to enforce the Arbitration Policy and to send this case to arbitration. Defs.' Mot. Compel.

## II. Legal Standard

The Federal Arbitration Act, which applies to "[a] written provision … evidencing a transaction involving commerce," 9 U.S.C. § 2, governs this dispute. Under the Act, an arbitration agreement "arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. "Although it is often said that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 740 (7th Cir.2010) (citing *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). That is, the Act was intended to respect parties' agreements to arbitrate and "put arbitration on a par with other contracts and eliminate any vestige of old rules disfavoring arbitration." *Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir.2003) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

.

If the parties have a valid arbitration agreement and the asserted claims in a lawsuit are within its scope, then the arbitration requirement must be enforced. 9 U.S.C. §§ 3-4; *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir.2004) (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir.1999)). So the first question to ask in a case like this one is whether a binding arbitration agreement exists. The answer to that question is determined under principles of state contract law. *Janiga*, 615 F.3d at 742 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("[T]he first principle that underscores all of our arbitration decisions: Arbitration is strictly a matter of consent.") (cleaned up).[2]

The party seeking to compel arbitration has the burden of establishing an agreement to arbitrate. 9 U.S.C. § 4; *see also A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018) ("as the party seeking to compel arbitration, Credit One had the burden of showing that A.D. was bound by the cardholder agreement as an authorized user"). At the same time, however, the party that is resisting arbitration bears the burden of identifying a triable issue of fact on the purported arbitration agreement. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The opponent's evidentiary burden is akin to that of a party opposing summary judgment under Federal Rule of Civil Procedure 56. *Id.* "[A] party cannot avoid compelled

---

[2]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* Just like at the summary judgment stage, the Court must view the evidence in the light most favorable to the non-movant (that is, the party opposing arbitration) and draw reasonable inferences in the non-movant's favor. *Id.* If the party opposing arbitration identifies a genuine issue of fact as to whether an arbitration agreement was formed, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see Tinder*, 305 F.3d at 735.

### III. Analysis

Baker concedes that the employment claims in the complaint fall within the scope of the Arbitration Policy—if he entered into it. So the only issue here is whether Baker entered into the Arbitration Policy. Under Illinois law, the basic ingredients of a contract are: offer, acceptance, and consideration. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 712 (7th Cir. 2019) (quoting *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (2006)). Baker's sole argument that a valid contract could not have been formed is that he never even had access to the Arbitration Policy until the start of this litigation, well after he was hired (and fired). Pl.'s Resp. Br. at 2. If Baker never had access to the Arbitration Policy, then no valid arbitration agreement was formed.

To show that Baker did have access to the arbitration agreement, Santander presented substantial circumstantial evidence showing that *every* Santander new hire must complete the Compliance Policies part of New-Hire Orientation; that the

Compliance Policies module requires an acknowledgement of the Arbitration Policy; and that Baker completed the Compliance Policies part of New-Hire Orientation. The declarations and screen shots submitted by Santander seem pretty convincing on each point. But Baker swears, under penalty of perjury, that "[a]t no point prior to or during [his] employment with Santander did [he] ever sign, access, or review an Arbitration Policy Agreement." Baker Decl. ¶ 9. That explicit declaration, made under oath, is enough evidence to deny the motion to compel (though without prejudice). Whether Baker had access to the Arbitration Policy is a matter within Baker's specific personal knowledge. So it matters not how strong Santander's other generalized evidence is as to all new employees. The Court simply cannot deem Baker's assertions as not credible in the face of his under-oath affidavit. *See Lawson v. Veruchi*, 637 F.2d 699, 705 (7th Cir.2011) ("It is not for [the court] ... to judge the credibility of ... competing versions [of fact]—that is a question for the jury."). The Court must accept—at this stage, and on this record—Baker's declaration as true. *See Tinder*, 305 F.3d at 734 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) ("In deciding whether the party opposing summary judgment (and by analogy compelled arbitration) has identified a genuine issue of material fact for trial, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.") (cleaned up). With Baker's specific averment in place, the reasonable inference is that some technical glitch prevented Baker from accessing the Arbitration Policy but still allowed him to finish the New-Hire Orientation section on Compliance Policies.

9

It is worth noting that Santander contends that "Baker's self-serving affidavit" is not, by itself, enough to create a triable issue of fact. Defs.' Reply Br. at 2. The Seventh Circuit has time and again tried to eliminate the "self-serving" critique as a basis for discarding evidence at the summary judgment stage. *E.g.*, *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("As we have repeatedly emphasized over the past decade, the term "selfserving" must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."); *Marr v. Bank of Am., N.A.*, 662 F.3d 963, 968 (7th Cir. 2011). Zombie-like, the argument keeps rising from the dead and refuses to go down for good.

To be sure, if an affidavit craftily skirts around a factual issue, then that affidavit can be discounted as a basis for resisting summary judgment. That is what happened in *Tinder v. Pinkerton Security*, cited earlier in this Opinion. In *Tinder*, the Seventh Circuit held that the non-movant's affidavit, which said that she did "not *recall* seeing or receiving the … brochure" about an arbitration program, was insufficient to raise a genuine issue of fact when the defendants presented evidence that the brochure was "definitely" sent and presumably received with plaintiff's paycheck. 305 F.3d at 735-36 (emphasis added). In contrast, here Baker does not assert a lack of knowledge or a lapse in memory—he *affirmatively* declares, under oath, that he did not have access to the Arbitration Policy.[3] That creates an issue of triable fact on whether he entered into the arbitration agreement.

---

[3]Santander cites *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, 2018 WL 2933608, at *2 (N.D. Ill. June 12, 2018), for the proposition that Baker's affidavit does not create a genuine dispute. R. 25, Def.'s Reply Br. at 2. It is true that *Friends for Health* decided a motion to compel against the non-movant despite an affidavit disclaiming

10

## IV. Conclusion

The Court denies Santander's motion to compel arbitration, but without prejudice to renewing it after limited discovery on whether Baker had access to the Arbitration Policy. The discovery might comprise, for example, a limited deposition of Baker to walk him through the New-Hire Orientation records and to ask him specifics of how it might be that he did not have access to the Policy. On the other side, Baker probably can issue written discovery requests to explore whether other employees have ever complained about the New-Hire Orientation system designating modules as complete when in fact they were not. The parties shall confer on proposed discovery and a discovery schedule, and file a joint status report on October 21, 2019, in advance of the October 24, 2019 status hearing.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 30, 2019

---

receipt of an email that contained the arbitration policy. 2018 WL 2933608, at *6. But faithful application of the summary judgment standard simply does not authorize this Court to disregard Baker's affidavit. The Court does note, however, that Santander's circumstantial evidence is quite powerful, and circumstantial evidence is often more persuasive than direct testimony (which is reliant on the credibility of the witness). Indeed, proceeding with an in-court hearing on this issue is fraught with risk for Baker, because the ultimate decision in this case might be an adverse credibility finding against him by a federal court. Having said that, based on the current record, Baker is entitled to a hearing.